IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:07-CR-6-FL

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DEONTRAYVIA ADAMS, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to suppress (DE # 16). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge James E. Gates entered memorandum and recommendation ("M&R") wherein he recommends that the court deny defendant's motion to suppress. Defendant timely filed objection to the M&R, and the government responded. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge and denies defendant's motion to suppress.

## BACKGROUND

Defendant was indicted on January 3, 2007, on charges of possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924, and possession of a quantity of marijuana in violation of 21 U.S.C. § 844(a). On February 27, 2007, eleven days after the deadline for filing pretrial motions, which had previously been extended on defendant's motion, had passed, defendant filed the instant motion to suppress along with a motion for leave to file the suppression motion. Defendant sought to suppress all evidence taken during and derivative from

a traffic stop that led to the charges against defendant, including the statements made by defendant to the police after his arrest. On March 8, 2007, the court denied defendant's motion for leave to file and ordered the clerk to strike the suppression motion.

On July 3, 2007, a jury convicted defendant on both counts of the indictment. Defendant was sentenced on October 16, 2007, and judgment was entered against him. Defendant filed an appeal from his conviction on October 17, 2007.[1] On May 14, 2010, the United States Court of Appeals for the Fourth Circuit ordered a limited remand for an evidentiary hearing and ruling on the motion to suppress. On May 24, 2010, defendant's motion to suppress was referred to United States Magistrate Judge James E. Gates.

The magistrate judge conducted an evidentiary hearing on July 21, 2010. At hearing, the government presented the testimony of J.S. McCann ("McCann"), Christoper Clark ("Clark"), and Craig Haines ("Haines"), who were each serving with the Raleigh Police Department ("RPD") at the time of defendant's arrest. At the time of the arrest, McCann and Clark served as officers and Haines as a sergeant (now a lieutenant). The court admitted three exhibits offered by the government without defendant's objection: a map of the area of Raleigh, North Carolina, where the traffic stop occurred; a copy of the RPD Miranda[2] form presented to defendant but not signed, and a copy of Haines' notes from his interview with defendant.

Defendant offered the testimony of Catherine Flowers ("Flowers"), a licensed private investigator and former RPD officer. Defendant also introduced twenty-six exhibits without objection: excerpts from the transcript of defendant's trial; photographs of the vehicle defendant was

---

[1] Defendant was assigned new counsel for his appeal. That counsel represents him on his motion to suppress.
[2] Miranda v. Arizona, 384 U.S. 436 (1966).

2

driving at the time of the stop, a street map of the area of the stop; three copies of an aerial view of the area of the stop;[3] a criminal history report for defendant showing a window tinting violation on July 4, 2005; a signed statement of the current owner of the vehicle that no changes were made after the date of purchase; photographs of a vehicle taken in the stop area by Flowers during her investigation; a video taken by Flowers of an attempted simulation of the events of the night in question, portions of which were shown at the hearing; and a copy of an inmate tracking report for defendant.[4] At the conclusion of the hearing, the court granted defendant leave to file an edited version of the video presented at the hearing to remove portions that defendant did not intend to offer as evidence. This edited version was submitted to the court on July 29, 2010, and accepted into evidence.

The court also allowed the parties to file supplemental memoranda.[5] With its supplemental memorandum, the government filed three evidentiary exhibits: a declaration by a purported expert on photography regarding the video and photographic evidence developed by Flowers (Government's Resp. Opp'n Ex. 1); a document the government's counsel represents to be a medical record of Clark relating to his eyesight (Id. Ex. 2); and a declaration by a Raleigh city engineer

---

[3] Multiple copies of this aerial view were used at the hearing because certain witnesses made notations on the particular copy presented to them. There was a need to avoid confusion among the markings of different witnesses and to be able to present witnesses at the outset of their testimony with a clean copy of the aerial view.

[4] As noted by the magistrate judge in the M&R, when, as here, the court is determining preliminary questions concerning the admissibility of evidence, it is not bound by the Federal Rules of Evidence, except those with respect to privilege. See Fed. R. Evid. 104(a); see also United States v. Matlock, 415 U.S. 164, 172 (1974) (holding that "the rules of evidence normally applicable in criminal trials do not operate with full force at [suppression] hearings before the judge to determine the admissibility of evidence"); Fed. R. Evid. 1101(d)(1). Nevertheless, even where not directly applicable, the court has relied on the Federal Rules of Evidence and the principles underlying them as guides in evaluating the evidence in this matter.

[5] The memoranda obviated oral argument on the motion, which the court at the time of the hearing had anticipated would be necessary.

regarding the status as public streets of various roadways at issue (Id. Ex. 3). The government did not move for leave to keep the evidentiary record open at the end of the hearing and did not move at the time of filing the supplemental exhibits for leave to do so out of time. The magistrate judge found that the government had not otherwise justified why the record should be opened to permit this additional evidence. The magistrate judge noted that the evidence would add little of substance to the information already included in the record, and would in any event be entitled to diminished weight because it was not subjected to cross-examination. To avoid any possible prejudice to defendant arising from the government's tardy exhibits, the court has not considered them in its evaluation of defendant's motion, and the clerk is directed to strike said exhibits from the record.

Because a key issue raised at the hearing involved the amount of light present in the area of the traffic stop, on July 23, 2010, the court entered a notice of intent to take judicial notice of the information from the U.S. Naval Observatory in the notice relating to the phase of the moon on both the night of the challenged traffic stop and the night of Flowers' attempted simulation (Notice of Intent to Take Judicial Notice ¶¶ 1-3.) Neither party objected to the court's taking judicial notice of this information.

On October 8, 2010, the magistrate judge entered M&R recommending that defendant's motion to suppress be denied. On October 23, 2010, defendant filed thirty-seven objections to the M&R. Many of the objections are factual in nature, and relate to the magistrate judge's findings of fact based on evidence presented at the hearing, as well as credibility determinations of certain witnesses. Some of defendant's objections were legal in nature. Where necessary, the court has addressed specific objections, but otherwise has organized its analysis by grouping factual and legal objections together, respectively.

4

Case 5:07-cr-00006-FL Document 103 Filed 12/27/10 Page 4 of 14

# FINDINGS OF FACT

Upon *de novo* review of the record in light of defendant's objections, the court adopts the findings of fact as outlined in the M&R. For clarity of the discussion to follow, the court briefly summarizes the relevant facts as found by the magistrate judge.

A. The Traffic Stop

On November 4, 2006, around 4:00 a.m., RPD officers McCann and Shawn Thompson were patrolling in southeastern Raleigh, North Carolina. (Tr. Suppression Hr'g 8:6-22.) Clark was also patrolling in a separate vehicle. (Id 8:23 to 9:1.) McCann and Thompson observed a dark green GMC Yukon sport utility vehicle ("SUV") stopped at a stop sign at the intersection of Bragg and Bloodworth streets, facing west. (Id. 9:12-23.) McCann and Thompson turned from East Street onto Bragg street,[6] and when this happened, the SUV turned left onto Bragg. (Id. 10:5-8.) McCann found the behavior of the SUV to be suspicious, since the driver seemed to be trying to avoid the police. McCann radioed Clark, and alerted him to the behavior of the SUV. (Id. 10:9-13; 10:14-21.)

Approximately five minutes later, Clark encountered the SUV and followed it. (Id. 11:1-8; 61:17-20.) The SUV made a left turn on Hoke Street, another left onto Garner Road, a right turn onto East Bragg Street, and a right onto Angelus Drive. (Id. 62:20 to 63:9.) The turns formed a u-shaped path, rather than moving in a single direction. (Id. 63:21-24.) Clark noticed that the SUV would accelerate rapidly at the beginning of each turn; Clark found this behavior to be suspicious.

---

[6]Defendant's Objection 1 highlights a minor fact discrepancy in the M&R—that McCann and Thompson "turned off of Bloodworth Street and onto Bragg Street." (M&R 5.) Defendant correctly notes that McCann's testimony shows that they turned from East Street onto Bragg Street. (Tr. Suppression Hr'g 9:19-20.) However, as the court notes in Part II.B.1 of this opinion, this factual discrepancy is minor at best, and does not change the outcome of the court's findings.

5

(Id. 63:13-17; 64:9.)

Angelus road runs through an apartment complex. (Id. 64:23 to 65:5.) When Clark turned onto Angelus, he saw the SUV make a three-point turn at the end of Angelus, and proceed back in the direction of the intersection of Angelus and East Bragg Street. (Id. 64:13-22.) As the SUV proceeded in this direction, it was moving "head on" towards Clark's patrol car. (Id. 65:9-12.) When the SUV was approximately twenty-five to thirty feet from Clark's vehicle, Clark observed that the driver was not wearing a seat belt. (Id. 65:13-24; 67:6-11.) Based on this observation, Clark initiated a traffic stop. (Id. 66:4-7.)

Clark asked the defendant, the driver of the vehicle, for his license and registration, noting that defendant seemed nervous. (Id. 68:12-15; 69:23-24.) Shortly thereafter, McCann and Thompson arrived at the scene. (Id. 70:5-13.) McCann approached defendant and asked him why he was in the neighborhood. (Id. 12:20-22.) Defendant replied that he was looking for a Hispanic female. (Id. 12:22-24.) McCann noticed that while defendant was talking, he positioned his body in an awkward way. (Id. 14:7-15.) McCann also noticed that defendant appeared to be nervous and was not wearing a seat belt. (Id. 14:19-21;15:2-5.)

B.  The Search and Arrest

McCann asked defendant to step outside of the vehicle. (Id. 15:9-11.) Defendant did not immediately comply, but finally did. (Id. 15:12 to 16:3.) McCann performed a pat-down for weapons, and twice during the pat-down defendant moved his hands towards his waist and was instructed by McCann to put his hands back up. (Id. 16:6-11; 13-17.) McCann found a knife and what he believed to be marijuana in defendant's pockets. (Id. 17:4-12; 13-21.) McCann asked defendant three times if he had marijuana, and the third time, defendant responded affirmatively,

6

stating that he did have some marijuana. (Id. 17:13-21; 19-24.) McCann removed the item from defendant's pocket and saw it was a single bag with four small units of marijuana. (Id. 17:25 to 18:4.) Defendant was placed under arrest, and the search of his person was continued incident to the arrest. (Id. 18:1-6.) The police uncovered $2,365.00 in United States currency in another of defendant's pockets. (Id. 18:6-8.) Defendant was placed in Clark's patrol car. (Id. 18:14-15.) A search of defendant's vehicle uncovered a nine millimeter semi-automatic pistol in the center consol. (Id. 18:12-19.)

C. The Custodial Interview

Defendant was transported to RPD station. (Id. 18:20-24.) Upon arrival, defendant was placed in an interrogation room. (Id. 18:20-24; 111:13-16.) Haines and McCann entered the room together. (Id. 112:1-4.) Haines asked defendant if he was familiar with his Miranda rights and defendant said that he was. (Id. 112:5-11.) After obtaining booking information from defendant, Haines read defendant his Miranda rights from a rights form. (Id. 115:20-24.) Per Haines' direction, McCann left the interview, and Haines interviewed defendant regarding the events of that morning. (Id. 118:24 to 119:2; 119:24 to 120:8.)

Defendant refused to answer questions about the marijuana and the gun and asserted that the stop of his vehicle was unlawful. (Id. 120:19-24.; 121:2-9.) After five minutes of this discussion, Haines ended the interview. (Id. 121:10-16.) Less than five minutes later, defendant yelled that he wanted Haines to return. (Id. 121:20 to 122:1.) Haines returned to the interview room and continued the interview. (Id. 122:2.) Defendant subsequently admitted that he smoked marijuana on a regular basis and that he kept the gun for protection and had possessed it for a long time. (Id. 122:11 to 123:1.)

7

# DISCUSSION

A. Standard of Review

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).

B. Defendant's Objections

As noted previously, defendant filed thirty-seven objections to the M&R, many of which are factual in nature. The court has organized its analysis by grouping factual objections together and grouping legal objections together. Within these categories, where addressing a specific objection was necessary, the court has done so.

1. Fact Objections (1, 2, 3, 4, 5, 6, 7, 17, 18, 19, 20, 20, 21, 22 23, 24, 25, 26, 27, 28, 29, 30, 31, 33, and 34)

Upon *de novo* review, the court has considered these objections as well as the evidence in the record, and finds that it agrees with the factual findings of the magistrate judge. Where the M&R contains minor factual discrepancies, the court has considered such, and finds any discrepancy to be

irrelevant to the outcome of the court's findings.

Some of defendant's objections are based on the magistrate judge's finding of a witnesses's credibility. As noted in the M&R, "[I]t is the role of the district court to observe witnesses and weigh their credibility during a pre-trial motion to suppress." United States v. Abu Ali, 528 F.3d 210, 232 (4th Cir. 2008). The court agrees with the magistrate judge's findings of witness credibility, as such findings are supported by the record.

Defendant's objections 20, 21, and 22 address the conclusions reached by the magistrate judge regarding Officer Clark's ability to see whether defendant was or was not wearing his seatbelt on the night of November 4, 2006. While the objections are written as objections to legal conclusions, these objections are really factual in nature. Upon *de novo* review, the court finds support in the record for the magistrate judge's conclusion that Officer Clark was able to see that defendant did not have on his seatbelt. Accordingly, the court adopts the findings of the magistrate judge with respect to what Officer Clark could see.

Objections 25 and 26 address the conclusions reached by the magistrate judge regarding Flowers' July 14, 2010, simulation of the traffic stop. As noted above, where defendant's objection is styled as an objection to a legal conclusion, the court notes that the objection is factual in nature. Upon *de novo* review of the record and the exhibits presented and marked upon by the witnesses at the evidentiary hearing, the court adopts the findings of the magistrate judge as to the conditions at the time of Flowers' simulation and the fact that Flowers has no specialized training in photography.

Objections 28, 29, 30, and 31 address the magistrate judge's findings of Clark's credibility. Defendant objects to the magistrate judge's findings regarding inconsistencies between Clark's trial testimony and testimony at the suppression hearing. While Clark's testimony at trial is inconsistent

9

with his suppression hearing testimony as to the exact distance between he and defendant when defendant made the three-point turn on Angelus Drive, as the magistrate judge notes, Clark's testimony regarding the distance between he and defendant when he observed the seatbelt violation, approximately thirty feet, is substantially the same. Upon *de novo* review of Clark's suppression hearing testimony, and the exhibits of Clark's trial testimony offered by defendant at the suppression hearing, the court agrees with the conclusions reached by the magistrate judge.

2. Legal Objections

a. Objection 8

The court has reviewed this objection *de novo*, and finds it irrelevant to the ultimate outcome. As the government notes, the fact that the reasonable suspicion standard governs the validity of traffic stops is not disputed by the parties. See United States v. Hassan El, 5 F.3d 726, 730 (4th Cir. 1993).

b. Objections 9, 10, 11, 12, 13, 14, 15, and 16

These objections address the conclusions reached by the magistrate judge regarding the nature of the road on which defendant's vehicle was stopped as well as the constitutionality of the stop itself. Defendant's argues that Officer Clark could not have had a reasonable suspicion to stop defendant because Angelus Drive, where defendant was stopped, is a private road, and the requirement to wear a seatbelt applies only to public roads.[7] The government argues that Angelus

---

[7] In support of his argument, defendant relies on the statute imposing the seat-belt requirement, N.C. Gen. Stat. § 20-135.2A(a), which provides that "each occupant of a motor vehicle . . . shall have a seat belt properly fastened about his or her body at all times when the vehicle is in forward motion on a street or highway in this State." N.C. Gen. Stat. § 20-135.2A9(a). The terms "highway" and "street" are both defined as "[t]he entire width between property or right-of-way lines of every way or place of whatever nature, when any part thereof is open to the use of the public as a matter of right for the purposes of vehicular traffic." N.C. Gen. Stat. §§ 20-4.01(13)(46). In contrast, a "private road" is defined as "not open to the use of the public as a matter of right for the purpose of vehicular traffic." N.C. Gen. Stat. § 20-4.01(30).

10

Drive is a public road, and offers in support of its argument, State v. Hopper, __ N.C. App.__, 695 S.E.2d 801, 807 (2010).

Defendant's objection 10 states that defendant objects to the M&R "conclusion" that Hopper "would support a conclusion that Angelus Drive is a 'street or highway' under N.C. Gen. Stat. § 20-135.2A(a)." (Def.'s Objections ¶ 6.) Upon review, the court does not find that the M&R makes a "conclusion" as to whether Hopper supports whether or not Angelus Drive is a "street or highway" under North Carolina law. In fact, the magistrate judge noted that "it is not necessary to resolve the issue of whether Angelus Drive is a public or private street." (M&R ¶ 11.) This court agrees that it is not necessary to resolve the issue of what kind of street Angelus drive is and finds the issue immaterial to the constitutionality of the vehicle stop.

As the magistrate judge notes, the record shows sufficient evidence from which Officer Clark could base a reasonable suspicion that defendant had operated or was about to operate his vehicle on a public road while not wearing his seatbelt. The magistrate judge notes evidence presented at the evidentiary hearing that at the point Clark observed that defendant was not wearing a seatbelt, defendant's vehicle had only two possible routes upon reaching the end of Angelus Drive. Both of these routes would require driving on Bragg street. (Tr. Suppression Hr'g 65:9-11.) Neither party disputes that Bragg street is a public road. This evidence supports a reasonable suspicion that defendant had violated and was about to violate a state seatbelt law. Under Hassan El, the reasonable suspicion standard is met, and the stop of defendant's vehicle was constitutional. See, e.g., Hassan El, 5 F.3d at 730; United States v. Smith, 35 F.3d 557, 1994 WL 445636 at *2 (4th Cir. Aug. 18, 1994) (unpublished) ("The traffic stop in this case amounted to an investigatory detention which must be justified by a reasonable suspicion that a crime has been or is about to be

11

committed."). The court also agrees with the magistrate judge's conclusion that it "would be irrational to conclude that [defendant] unbuckled solely for the purpose of executing a U-Turn on Angelus." (M&R 12.)

Accordingly, after *de novo* review of Objections 9 through 16, the court adopts the recommendations of the magistrate judge with respect to these objections and agrees with its conclusions.

c. Objections 32, 35, 36, 37

These objections address the conclusions reached by the magistrate judge regarding defendant's custodial statements. The court will not recite the Miranda case law as laid out in the M&R, but focuses its *de novo* review on defendant's specific objections regarding his statements to the police.

In Objection 32, defendant argues that stating that he understood his Miranda rights and then refusing to sign a statement waiving those rights constituted a refusal to waive his Miranda rights. Defendant also argues the fact that Haines did not give defendant another Miranda warning when Haines returned to the interview room further underscores that defendant did not waive his rights. (Def.'s Objections ¶ 32.) As provided in the M&R, and evidently acknowledged by defendant, the refusal to sign a Miranda waiver does not compromise the validity of an effective oral waiver. United States v. Thompson, 417 F.2d 196, 197 (4th Cir. 1969); (M&R 19). Also noted in the M&R is the rule that "the mere passage of time . . . does not compromise a Miranda warning." United States v. Frankson, 83 F.3d 79, 83 (4th Cir. 1996).

The record reflects that Haines advised defendant of his Miranda rights twice before defendant made inculpatory statements. Haines first advised defendant of his rights when Haines entered the interrogation room. (Tr. Suppression Hr'g 112:7-11). The next time was when Haines

12

read defendant his rights from the RPD advice of rights form. (Id. at 113:2-3.) The record shows that after Haines read defendant his rights, defendant acknowledged that he understood them. As noted in the M&R, responding to questions as defendant did, after receiving Miranda warnings, can constitute an implicit waiver of Miranda rights. See United States v. Cardwell, 433 F.3d 378, 389-90 (4th Cir. 2005). Additionally, as previously noted, the interview stopped shortly after it began because defendant would not talk with Haines. (Id. 121:10-16.) About five minutes after Haines left, defendant called for him to return. (Id. 121:20 to 122:1.) The short time period between defendant's refusal to talk and his call for Haines, coupled with the fact that the record shows defendant re-initiated the interview, suggest that defendant's waiver of his Miranda rights was knowing and voluntary.

Additionally, the court agrees with the magistrate judge that various reasons could have existed that led defendant to change his mind about the questioning. The record does not suggest that Haines was untruthful in his testimony regarding his questioning of defendant, and the record supports the magistrate judge's conclusion that defendant called Haines back into the interrogation room and began to answer Haines' questions. The record also supports Haines' reasons for conducting the interview alone. (Id. 119:13-18, 133:17-23.)

Accordingly, the court adopts the magistrate judge's conclusion that defendant voluntarily, knowingly, and understandingly waived his Miranda rights.

## CONCLUSION

Upon *de novo* review of those portions of the magistrate judge's M&R to which specific objections have been filed, and upon considered review of those portions of the M&R to which no such objection has been made, the court ADOPTS the findings and recommendations of the magistrate judge in full, and DENIES defendant's motion to suppress (DE # 16). Additionally, the

13

clerk is DIRECTED to strike the government's exhibits to its response in opposition from the record (DE ## 94-1, 94-2, 94-3.)

SO ORDERED, this the 27th day of December, 2010.

LOUISE W. FLANAGAN
Chief United States District Judge

14